UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br>　　　　Plaintiff/Counter-Defendant,<br>vs.<br><br>DON JUAN W. FUTRELL,<br>　　　　Defendant.<br>_____<br>DON JUAN W. FUTRELL,<br>　　　　Counter-Claimant,<br>vs.<br>AMERICAN GENERAL LIFE INSURANCE COMPANY, *et al.*,<br>　　　　Counter-Defendants.<br>_____ | 2:11-cv-00977-PMP-CWH<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This matter is before the Court on Counter-Defendant AAA Life Insurance Company's Motion to Amend/Correct its Answer to Assert Additional Affirmative Defenses to Don Juan W. Futrell's Third-Party Complaint (Dkt. No. 40), filed February 8, 2012. Futrell responded to AAA's Motion on February 27, 2012 (Dkt. No. 42), and AAA replied on March 9, 2012 (Dkt. No. 49). The Court conducted a motion hearing on March 6, 2012.

## **BACKGROUND**

This case began as a contract dispute brought by American General Insurance Company against Don Juan Futrell. Futrell filed an Answer and a Third-Party Complaint against AAA Insurance Company seeking $750,000 in life insurance benefits. Futrell is the named beneficiary of a life insurance policy issued by AAA to Joshua Dufort. On November 8, 2010 Dufort was

found dead in Henderson, Nevada. The Clark County Coroner ruled Dufort's death a homicide. During the investigation, police searched Futrell's home pursuant to a warrant and seized several items. According to Mark Hosaka, a detective with the Henderson Police Department, he "personally informed Futrell that he is the 'prime suspect' of the murder."[1] *See* Affidavit of Detective Mark Hosaka, Exh. A to Counter-Defendant AAA's Motion to Amend (Dkt. No. 40), at ¶ 4.

AAA's instant motion seeks to add three affirmative defenses to its answer to reflect the slayer statutes under Nevada state law, which operate under "the principle that a killer cannot profit or benefit from his or her wrong." Nev. Rev. Stat. 41B.200(1).[2] Specifically, "a killer of a decedent forfeits any . . . right, property, interest or benefit that . . . accrues or devolves to the killer based upon the death of the decedent." Nev. Rev. Stat. 41B.310(1).

Accordingly, AAA proposes the following amendment:

### NINETEENTH AFFIRMATIVE DEFENSE

Futrell's claims are barred, in whole, because Futrell killed Dufort. Therefore, pursuant to NRS 41B.200(1) and/or NRS 41B.310(1), Futrell forfeited any right or interest he had to benefits from Dufort's life insurance policy.

### TWENTIETH AFFIRMATIVE DEFENSE

Futrell's claims are barred, in whole, because Futrell conspired to kill Dufort or aided and abetted in Dufort's murder. Therefore, Futrell forfeited any right or interest he had to benefits from Dufort's life insurance policy pursuant to NRS 41B.200(1) and/or NRS 41B.310(1).

### TWENTY FIRST AFFIRMATIVE DEFENSE

Futrell's claims are barred, in whole and in part, because AAA acted with substantial information and a reasonable belief that Futrell killed or had Dufort killed thereby precluding Futrell from any proceeds from Dufort's life insurance policy.

---

[1] Detective Hosaka does not indicate when he informed Futrell of his suspect status. Hosaka represents that the murder investigation is ongoing. Futrell disputes whether he is still a prime suspect in the murder of Dufort.

[2] AAA's motion filed February 8, 2012 is well within the May 28, 2012 deadline to amend pleadings set by this Court's scheduling order. (Dkt No. 45).

1  However, Nevada statutory law provides that the remedy to declare a person a culpable
2  actor so as to forfeit benefits is by bringing a civil action, not raising an affirmative defense.  *See*
3  Nev. Rev. Stat. § 41B.260(1) ("an interested person may bring a civil action alleging that a
4  person was a culpable actor in the felonious and intentional killing of a decedent . . . whether or
5  not any person who is alleged to be a killer in the civil action. . . has been, in a separate criminal
6  action, charged with . . . being a culpable actor in the felonious and intentional killing of the
7  decedent . . . .).  AAA then would have the burden to prove by a preponderance of the evidence
8  that Futrell was a culpable actor in the murder of Dufort in order to have the Court render a
9  declaratory judgment declaring Futrell is not entitled to the policy's benefits.  Nev Rev. Stat. §
10 41B.260(2); *see also* Nev. Rev. Stat. §§ 30.010-30.160.

11  Rule 8(c)(2) provides that "[i]f a party mistakenly designates . . . a counterclaim as a
12 defense, the court must, if justice requires, treat the pleading as though it were correctly
13 designated, and may impose terms for doing so."  Thus, the Court will treat the pleading as
14 though it was properly brought as a counterclaim.

## DISCUSSION

### I. Counter-Defendant AAA's Motion to Amend Answer

17  Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing
18 party's written consent or the court's leave.  The court should freely give leave when justice so
19 requires."  As noted above, Futrell opposes AAA's amendment.

20  The determination of whether to grant leave to amend lies "within the sound discretion of
21 the trial court," *DCD Programs, Ltd. v. United* States, 833 F.2d 183, 185 (9th Cir. 1987) (citing
22 *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)), but such discretion should be guided
23 by the underlying purpose of Rule 15 - facilitation of a decision on the merits.  *See DCD*
24 *Programs, Ltd. v. Leighton*, 883 F.2d 183, 186 (9th Cir. 1987) (citation omitted).  Rule 15's
25 policy of favoring amendments is applied in the Ninth Circuit with "extreme liberality."  *Owens*
26 *v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of*
27 *Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

28  However, the policy of favoring amendments is not unlimited.  *Eminence Capital, LLC v.*

1 *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  In determining whether to grant leave to
2 amend, courts consider five factors:  (1) bad faith, (2) undue delay, (3) prejudice to the opposing
3 party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the
4 pleading.  *Id*.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest
5 weight."  *Id.* (citing *DCD Programs, Ltd.,* 833 F.2d at 185).  The party opposing the amendment
6 bears the burden of showing prejudice.  *See DCD Programs*, 833 F.2d at 187.  Absent prejudice,
7 or a strong showing of any of the remaining factors, a presumption exists under Rule 15 in favor
8 of granting leave to amend.  *Eminence Capital, LLC*, 316 F.3d at 1052.

9 **A. Bad Faith**

10 Futrell first argues that AAA's motion was brought in bad faith.  Specifically, Futrell
11 alleges that AAA is willfully deceiving the Court in claiming that it has new evidence regarding
12 Futrell's involvement in the murder since AAA knew as early as January 2011 that Futrell was
13 considered a suspect because the company kept in contact with police regarding the investigation.
14 AAA contends that although it had knowledge that Futrell was under investigation, the company
15 did not have sufficient evidence on which to base a claim under the slayer statute until it obtained
16 the sworn affidavit of Lead Detective Mark Hosaka.  AAA received the declaration after the
17 filing of its answer.  *See* Affidavit of Detective Mark Hosaka, Exh. A to Counter-Defendant
18 AAA's Motion to Amend (Dkt. No. 40); *see also* Counter-Defendant AAA's Answer to
19 Counterclaim (Dkt. No. 21).

20 The Court finds that AAA's decision to not plead the claim until after it received
21 sufficient evidentiary support for such a claim is not evidence of bad faith.[3]

22 Futrell also claims that bad faith is evident in the timing of AAA's motion.  In support,
23 Futrell points to AAA's five month delay after Futrell objected to discovery requests related to
24 the issue addressed in the amendment and the filing of this motion prior to an upcoming
25 professional boxing match in which AAA knew Futrell was a participant.  The Ninth Circuit has

---

[3]  In fact, filing the claim without such a declaration from law enforcement or other sufficient evidentiary support would have likely been sanctionable behavior under Fed. R. Civ. P. 11(b)(3).

- 4 -

1  held that delay in bringing an amendment does not constitute bad faith when there is no
2  indication of a wrongful motive. *See DCD Programs, Inc.*, 833 F.2d at 187.
3        Detective Hosaka signed his affidavit on November 30, 2011.  AAA's motion was filed
4  on February 8, 2012.  The delay of slightly over two months is minimal and not indicative of bad
5  faith.  Further, there is no evidence that AAA's filing of its motion prior to Futrell's boxing
6  match was anything but fortuitous.
7        Futrell also argues that AAA has never relied on the slayer statute in providing reasons
8  for denying the claim.  However, as discussed, AAA did not have an affidavit to support such a
9  claim until after the answer was filed and well after it refused to pay under the policy.  Therefore,
10 the argument that Futrell's participation in Dufort's murder was not a reason to deny the claim is
11 not warranted at this juncture.
12       Accordingly, the Court finds that AAA's proposed amendment was not sought in bad
13 faith.

**B.  Undue Delay**

15 "Delay alone does not provide sufficient grounds for denying leave to amend . . . ."
16 *Vickerman v. Dept. of Housing and Urban Dev.*, No. 3:03-CV-0222-LRH-VPC, 2006 WL
17 2129805, at *2 (D. Nev. July 28, 2006) (citing *Hurn v. Retirement Fund Trust of Plumbing,*
18 *Heating and Piping Indus. of Southern California*, 648 F.2d 1252, 1254 (9th Cir. 1981)).
19 "However, where there is prejudice to the opposing party or the amendment appears frivolous,
20 undue delay in seeking the amendment will constitute grounds for denial." *Id*.  A moving party
21 may be precluded from amending if the party knew or should have known the facts and theories
22 raised by the amendment in the original history. *AmerisourceBergen Corp. v. Dialysist West,*
23 *Inc.*, 465 F.3d 946, 954 (9th Cir. 2006).
24       Futrell argues that AAA kept in close contact with the Henderson Police Department and
25 was aware of the investigation, including the search warrant, prior to filing an answer.  Futrell
26 further claims that AAA delayed asserting the slayer statute because the company knew it had no
27 evidence to support such a claim and wished to avoid bad exposure.  AAA essentially agrees.

AAA asserts that it waited to assert the slayer statute until the company had sufficient evidence upon which it could file an amendment.

The Court finds that AAA's explanation is satisfactory. *See Wixon v. Wyndham Resort Dev. Corp.*, No. C07-02361 JSW, 2007 WL 3101331, at *2 (N.D. Cal. Oct. 22, 2007). This is especially true given the severe nature of the claim.

The Ninth Circuit has also considered undue delay in the context of delaying litigation. *See, e.g., Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). While the amendment could potentially require additional discovery into circumstances surrounding the murder, discovery in this matter does not close until August 27, 2012. Thus, the amendment will not produce an undue delay in litigation. Accordingly, this factor weighs in favor of granting the amendment.

**C. Prejudice to Opposing Party**

Futrell, as the opposing party, bears the burden of demonstrating he will be prejudiced should leave to amend be granted. *DCD Programs, Ltd.*, 833 F.2d at 187. "Prejudice typically arises where the opposing party is surprised with new allegations which require more discovery or will otherwise delay resolution of the case." *Wehlage v. EmpRes Healthcare Inc.,* No. C 10–5839 CW, 2012 WL 3803 64, at *2 (N.D.Cal. Feb.6, 2012) (citing *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99) (9th Cir. 1986)).

Futrell claims that he will suffer prejudice through negative public opinion. While Futrell is a professional boxer and may have some public exposure, negative publicity was a risk that he should have considered prior to initiating litigation to claim Dufort's death benefits. There is no evidence that AAA is acting improperly by pursuing a claim that it has a legal right to assert in order to prove that Futrell is not entitled to the benefits he seeks to recover.[4]

Futrell further argues that he will be prejudiced by answering discovery pertaining to portions of his life which would otherwise not have been discoverable. Again, Futrell put at

---

[4] Futrell claims that AAA offers no evidence to suggest the allegations in the proposed amendment have any basis in fact. However, the affidavit of Detective Hosaka discussing the investigation of Futrell was attached as an exhibit to AAA's motion.

- 6 -

1  issue whether he is entitled to benefits and any information that can reasonably determine
2  whether he is eligible is discoverable.

3  In addition, Futrell claims that AAA's reliance on the slayer statute during litigation after
4  failing to address the statute in its reasons for denying the policy, is prejudicial.  While this is a
5  new claim that Futrell will be required to defend, it is not one of surprise.  Futrell was aware, by
6  his own admission, five months prior to the filing of this motion that AAA intended to seek
7  discovery regarding Futrell's involvement in Dufort's murder.

8  Further, as discussed *supra*, the amendment will not unduly delay proceedings as
9  discovery remains open.  Thus, Futrell will not suffer prejudice as a result of delay and will not
10  be forced to defend these allegations on the eve of trial.  *See Lockheed Martin Corp. v. Network*
11  *Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore
12  delay the proceedings supports a district court's finding of prejudice . . . .").  The Court finds that
13  Futrell has not meet his burden to show that AAA's amendment would result in prejudice.

14  **D.  Futility**

15  Futrell makes no argument regarding the futility of AAA's proposed amendment.
16  Nonetheless, the Court finds that a claim pursuant to the slayer statute would not be futile.  "[A]
17  proposed amendment is futile only if no set of facts can be proved under the amendment to the
18  pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton,*
19  *Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  Here, although Futrell disputes that
20  he played a role in Dufort's murder, it is at least conceivable that AAA could prevail in obtaining
21  discovery that would at least create a question of fact for the jury.  This is especially true given
22  that the murder investigation is ongoing and a detective has provided an affidavit that Futrell is a
23  prime suspect.

24  **E.  Previous Amendments**

25  AAA has not previously amended its answer.  Thus, this factor weighs in favor of
26  granting leave to amend.

**II. Futrell's Request for Rule 11 Sanctions**

In his response to AAA's motion, Futrell requests sanctions pursuant to Rule 11. This request is not properly before the Court. Rule 11(c)(2) provides that "[a] motions for sanctions must be made separately from any other motion. . . ." Further, Futrell does not certify that he served notice of the intent to seek sanctions 21 days prior to filing the request. Fed. R. Civ. P. 11(c)(2); *see also* 1993 Amendments.

Regardless, the Court does not find that Rule 11(b) has been violated. AAA's filing of its Motion to Amend was not improper and does not give rise to the type of conduct sanctionable under Rule 11.

## CONCLUSION

For the foregoing reasons, the Court finds that AAA, in filing the instant motion, did not exhibit bad faith or use undue delay. Further, Futrell has failed to show that he will suffer prejudice as a result of the amendment. The Court additionally determines that the amendment would not be futile, and that AAA has not previously amended its answer. Therefore, AAA's proposed amendment should be permitted.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Counter-Defendant AAA Life Insurance Company's Motion to Amend/Correct (#40) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Counter-Claimant Futrell's request for Rule 11 sanctions be **DENIED**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's

1 order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d
2 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.
3 1983).

4     DATED this 8th day of May, 2012.

       _____
       C.W. HOFFMAN, JR.
       United States Magistrate Judge